**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| STEVEN WHITLOW, | ) | |
| Plaintiff/Intervenor | ) | Case No. 2:10-CV-02182-MPM-DGB |
| | ) | |
| v. | ) | |
| | ) | |
| COGNIS CORP., | ) | |
| Defendant. | ) | |

**PLAINTIFF EEOC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

On December 12, 2011, this Court denied Cognis's Motion for Summary Judgment in this action, thus permitting EEOC's retaliation claims against Cognis to move forward toward trial. EEOC's retaliations claims are brought on behalf of Steven Whitlow and five other employees, each of whom was required to sign a Last Chance Agreement ("LCA") as a condition of continued employment with Cognis. Each LCA required the signator-employee to give up his right to file a charge of discrimination with the EEOC -- even as to conduct that had yet to occur. Cognis terminated Whitlow when he refused to be bound by the Agreement because he did not want to give up his civil rights, and Cognis permitted the five other claimants to remain employed because they submitted to the Agreement in its entirety. In its ruling denying Cognis's Motion for Summary Judgment, the Court invited EEOC to submit its own Motion for Summary Judgment, which EEOC does now.

1

As is often repeated, summary judgment is appropriate only where there is no genuine issue of material fact and the issues before the court can be resolved as a matter of law. The factual findings and the legal determinations in the Court's December 12, 2011 decision are now "law of the case" and govern the ongoing proceeding unless they are manifestly erroneous. *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.,* 481 F.3d 1002, 1003 (7th Cir. 2007). In rejecting Cognis's Motion for Summary Judgment as to both Whitlow and the other claimants, this Court has already addressed the factual and legal questions that are now at the heart of EEOC's Motion for Summary Judgment, making clear that EEOC's claims satisfy the summary judgment standard.

The factual findings and legal determinations contained in this Court's December 12, 2011 Opinion compel the conclusion that EEOC is entitled to summary judgment that:

(1) Cognis retaliated against Whitlow when it terminated him on May 21, 2007 solely because Whitlow revoked his Last Chance Agreement because of its charge-filing ban, which was void as a matter of public policy; and

(2) Cognis retaliated against both Whitlow and the other claimants by requiring them to sign, as a condition of their continued employment, Last Chance Agreements containing void charge-filing bans and threatening them with termination if they breached the Agreements.

Not only are these conclusions amply supported by the law of the case, they are amply supported by the record and legal precedent as well as policy considerations. The Supreme Court has described unlawful retaliation as any employer conduct that "might . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. v. White*, 548 U.S. 53, 73 (2006). There can be no more classic example of employer conduct that

2

"might dissuade[] a reasonable worker from making or supporting a charge of discrimination"

than terminating an employee who will not agree to give up that right (as Cognis did with

Whitlow) and threatening an employee with termination if he files a charge of discrimination (as

Cognis did with Whitlow and the five other claimants).

## II. UNDISPUTED MATERIAL FACTS

### A.  As a Condition of Continued Employment, Cognis Required Whitlow to Sign an LCA Giving Up His Right to File a Charge of Discrimination

1.  Steven Whitlow was employed by Cognis and its predecessors at a facility in Kankakee, Illinois, for approximately 19 years.  *EEOC v. Cognis,* No. 10-CV-2182, 2011 WL 6149819, at *1 (C.D. Ill. Dec. 12, 2011) (Docket No. 35) ("Op.") at 1[1]; *see also* Deposition of Steven Whitlow ("Whitlow Dep."), *attached as* Ex. 1, at 16:20-23.

2.  On May 10, 2007, Cognis did not unequivocally terminate Whitlow.  Op. at 10; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 1 ("Whereas Cognis has decided to offer Whitlow one last chance to continue his employment *in lieu of termination* . . . .") (emphasis added); Whitlow Dep., *attached as* Ex. 1, at 82:2-9, 85:21-86:12.

3.  Instead, on May 10, 2007, Cognis offered Whitlow a choice: (1) he could sign a "Last Chance Employment Agreement" ("LCA") or (2) he would be fired, effective immediately.  Op. at 10; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 1; Company 30(b)(6) Dep., *attached as* Ex. 3, at 56:11-57:1; Whitlow Dep., *attached as* Ex. 1, at 85:21-86:12.

4.  The language of the LCA that Cognis presented to Whitlow states, "Cognis has decided to offer Whitlow one last chance to continue his employment in lieu of termination . . . . [Cognis] agrees to offer Whitlow the opportunity to retain his position.  Whitlow agrees to fully comply with all requirements of the job."  Op. at 10-11; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 1.

5.  The Agreement also provides:  "3. The Company and Whitlow agree that this [LCA] shall remain in full force and effect during the next two years."  Op. at 2; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 1; Deposition of Mark Richard Egler ("Egler Dep."), *attached as* Ex. 4, at 48:9-17, 74:13-19.

---

[1] For ease of reference, further citations to this Court's December 12, 2011 Opinion denying Cognis's Motion for Summary Judgment will be cited with the format "Op. at [page number(s)]," with the page number(s) cited referring not to the pagination assigned by Westlaw, but to the Court's pagination as reflected in the Opinion as it appears as Docket Item No. 35.

6.  The Agreement continues, "4. Whitlow agrees that in the event that he does not meet performance expectations, or violates any of the Company's rules or regulations, receives any discipline, receives any operating errors, or is absent or misses any more work his employment will be immediately terminated without recourse to the grievance or arbitration provision of the collective bargaining agreement, or to any agency, federal, state, or municipal court."  Op. at 2; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 2.

7.  The Agreement also required Whitlow to agree, in advance of any action by Cognis over the next two years that the Agreement would have been in effect, that "5. Should Whitlow be terminated pursuant to the provisions of paragraph 4 above, he agrees that such termination will be lawful and for non-discriminatory purposes."  Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 2.

8.  The Agreement also required Whitlow, in advance of any action by Cognis over the next two years, to "6. . . . stipulate[] and agree[] that should termination of his employment take place pursuant to the provisions of paragraph 4 above, it would be for just cause under the terms of the collective bargaining agreement and for non-discriminatory reasons; and he accordingly waives all rights to grieve and/or arbitrate his termination under the terms of the current collective bargaining agreement *and all rights to file charges or complaints, regardless of the agency or court, challenging such termination.*"  Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 2 (emphasis added).

9.  Further, the Agreement required Whitlow to "7. . . . release and waive any claim of liability against Cognis, its affiliates, partners, agents and employees, for, on account of, or in relation to Whitlow's rights' [sic] employment with Cognis or its affiliates, or his status under this Last Chance Agreement, and agrees not to commence any action or proceeding, including but not limited to any common law claim or statutory claim under Title VII of the Civil Rights Act of 1964, and similar state or local fair employment practices law, regulations, or ordinance, the Age Discrimination in Employment ACT (ADEA), the Rehabilitation Act of 1973, or the Americans with Disabilities Act of 1990 (ADA), the National Labor Relations Act (NLRA), the Family and Medical Leave Act (FLMA), or before any state, federal or court or administrative agency, civil rights commission or agency, or any other forum."  Op. at 2; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 2.

10.  Whitlow's LCA restrained his civil rights.  Op. at 12; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 2.

11.  Whitlow signed the Last Chance Agreement on May 11, 2007.  Op. at 11; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 3; Company 30(b)(6) Dep., *attached as* Ex. 3, at 54:15-17; Whitlow Dep., *attached as* Ex. 1, at 87:17-88:16.

12.  Cognis made Whitlow's continued employment after May 10, 2007 contingent on his willingness to agree to and uphold the terms of the LCA. Op. at 11; *see also* Whitlow

Last Chance Agreement, *attached as* Ex. 2, at p. 1 ("Whereas Cognis has decided to offer Whitlow one last chance to continue his employment in lieu of termination and Whitlow has decided to accept the terms of the Agreement as his last chance to retain his employment."); Company 30(b)(6) Dep., *attached as* Ex. 3, at 56-11:57:1, 220:19-22; Whitlow Dep., *attached as* Ex. 1, at 86:10-12.

13. Whitlow continued to work for Cognis, in the same capacity as he had prior to May 10, 2007, until May 21, 2007.  Op. at 11; *see also* Def.'s Resp. to P. EEOC's First Request for Admission, *attached as* Ex. 5, Nos. 6 & 13.

14. Between May 10, 2007 and May 21, 2007, Cognis had no problems with Whitlow's job performance.  Op. at 3; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 65:3-9, 92:15-23.

## B. **Whitlow Revoked the LCA Because He Wanted to Protect His Civil Rights**

15. Despite initially signing the LCA, Whitlow questioned whether he had made the correct decision to waive the rights outlined in the LCA.  Op. at 3; Whitlow Dep., *attached as* Ex. 1, at 106:6-19 (Whitlow consulted NAACP because of his concerns about the Agreement).

16. On May 21, 2007, Whitlow reached out to Cognis and requested that the LCA be modified so that he could retain his civil rights.  Op. at 4; *see also* Def.'s Resp. to P. EEOC's First Request for Admission, *attached as* Ex. 5, Nos. 9 & 11; Whitlow Dep., *attached as* Ex. 1, at 92:22-93-7, 95:21-25.

17. Whitlow desired to be bound by the requirement that he comply with all requirements of his job, but desired to remove all restrictions from the LCA that restricted his civil rights.  Op. at 4; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 66:8-23; Def.'s Resp. to P. EEOC's First Request for Admission, *attached as* Ex. 5, Nos. 8 & 9; Def.'s Answers to P. EEOC's Second Set of Interrogatories, *attached as* Ex. 6, No. 14; Def.'s Answers to P. EEOC's Third Set of Interrogatories, *attached as* Ex. 7, No. 17; Whitlow Dep., *attached as* Ex. 1, at 92:22-93:7, 95:21-25.

18. Cognis's Human Resources Manager responded that she would have to confer with management about Whitlow's request to modify the LCA and then would get back to him.  Op. at 4; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 66:24-67:9.

19. Thereafter Whitlow returned to work for the day, and the Human Resources Manager conferred with management about Whitlow's request, indicating to management that Whitlow had raised a concern about his civil rights.  Op. at 4; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 66:24-67-18; Whitlow Dep., *attached as* Ex. 1, 98:18-20.

20. Later that same afternoon, Cognis called Whitlow to a meeting and told him that under no circumstances would Cognis alter the LCA.  Op. at 4; *see also* Def.'s Resp. to P. EEOC's

First Request for Admission, *attached as* Ex. 5, Nos. 9 & 11; Whitlow Dep., *attached as* Ex. 1, at 99:9-100:1.

21. Cognis did not inform Whitlow that he did not have to give up his civil rights under the LCA.  Op. at 4; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 61:17-62:8.

22. Furthermore, the Company did not explain to Whitlow that the LCA did not actually prevent him from filing a charge with the EEOC, even though the wording in the LCA indicated that Whitlow would have been prevented from filing such a charge.  Op. at 5; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2, at p. 2; Company 30(b)(6) Dep., *attached as* Ex. 3, at 62:9-21, 83:5-84:6; Whitlow Dep., *attached as* Ex. 1, at 186:9-13.

23. Although Cognis's stated purpose of the LCA was simply to prevent Whitlow from engaging in the arbitration and grievance process, Whitlow was not told this.  Op. at 5; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 125:4-131:7, 139:24-140:7.

24. Cognis also did not inform Whitlow that Paragraphs 5-7 of the Agreement were limited in scope to past conduct by Cognis.  Op. at 5; *see also* Def.'s Resp. to P. EEOC's Third Set of Requests for Admission, *attached as* Ex. 8, No. 10.

25. On May 21, 2007, after Cognis explicitly refused to modify the LCA in any way, Whitlow revoked the LCA that he had entered into on May 11, 2007.  Op. at 11; *see also* Def.'s Resp. to P. EEOC's First Request for Admission, *attached as* Ex. 5, Nos. 9 & 11-12; Whitlow Dep., *attached as* Ex. 1, at 99:9-101:19.

26. Whitlow revoked his LCA because it restrained his civil rights.  Op. at 11; *see also* Whitlow Dep., *attached as* Ex. 1, at 100:5-11; 181:12-182:3.

27. Cognis was aware that Whitlow was revoking the LCA only because of his concern about his civil rights.  Op. at 5; *see also* Company 30(b)(6) Dep., *attached as* Ex. 3, at 66:8-16.

## C. Cognis Knew That the LCA's Ban on Charge Filing Was Void and Unenforceable

28. At the time that Whitlow revoked his LCA, Cognis knew that it was prohibited retaliation to prohibit an employee from filing a charge with the EEOC.  Company 30(b)(6) Dep., *attached as* Ex. 3, at 34:1-15.

29. Cognis management also knew that employees had the right to file charges and complain about discrimination.  Starr Dep., *attached as* Ex. 9, at 23:6-9; Egler Dep., *attached as* Ex. 4, 67:17-24

**D.  Cognis Terminated Whitlow Because He Revoked the LCA**

30. Immediately, upon Whitlow's revocation of the LCA, Cognis terminated Whitlow's employment – because he had revoked the LCA.  Op. at 11; *see also* Lemenager Dep., *attached as* Ex. 10, at 119:11-19, 125:1-127:3; E-mail from Cognis to EEOC Investigator, *attached as* Ex. 11 (showing Whitlow was terminated on May 21, 2007, the date on which he revoked the LCA); Whitlow Dep., *attached as* Ex. 1, at 100:12-16.

31. Whitlow would have retained his job if he had been willing to waive his protected rights, assuming that his job performance was satisfactory.  Op. at 11; *see also* Whitlow Last Chance Agreement, *attached as* Ex. 2; Def.'s Resp. to P. EEOC's First Request for Admission, *attached as* Ex. 5, No. 13.

32. Whitlow's termination was directly caused by his revocation of the LCA.  No other causal factor played a role in Whitlow's termination on May 21, 2007.  Op. at 11; *see also* Def.'s Reply Mem. in Support of Motion for Summary Judgment (Docket No. 34) at p. 19, Def.'s Resp. to Additional Material Fact No. 28 (wherein Cognis does not dispute the fact that "[a]fter Whitlow revoked the Agreement, Lemenager told him that he was terminated because he 'didn't sign the Last Chance Agreement'").

33.  Cognis admitted that Whitlow's performance after May 10, 2007 played no role in its decision to terminate him. Op. at 20 n. 19; *see also* P. EEOC's Undisputed Fact No. 14.

**E.  As a Condition of Continued Employment, Cognis Required Five Additional Employees to Sign LCAs Giving Up the Right to File a Charge**

34. As with Whitlow, Cognis required five other employees to sign LCAs giving up the right to file a charge as a condition of continued employment.  *See* Bunnell Last Chance Agreement, *attached as* Ex. 12; Hillman Last Chance Agreement, *attached as* Ex. 13; Johnson Last Chance Agreement, *attached as* Ex. 14; Tholen Last Chance Agreement, *attached as* Ex. 15; Wright Last Chance Agreement, *attached as* Ex. 16.

35. Like Whitlow's LCA, each of the five other LCAs stated that the affected employee "agrees not to commence any action or proceeding . . . before any state, federal court or administrative agency, civil rights commission or agency, or any other forum."  Op. at 5; *see also* Bunnell Last Chance Agreement, *attached as* Ex. 12, at p. 2; Hillman Last Chance Agreement, *attached as* Ex. 13, at p. 2; Johnson Last Chance Agreement, *attached as* Ex. 14, at p. 2; Tholen Last Chance Agreement, *attached as* Ex. 15, at p. 2; Wright Last Chance Agreement, *attached as* Ex. 16, at p. 3.

36. Cognis acknowledges that the charge-filing bar contained in each of the LCAs is unenforceable.  Op. at 18; *see also* Def.'s Mem. in Support of Mot. for Summary Judgment (Docket No. 30) at p. 13 (recognizing that prohibitions on charge filing with the EEOC are "void and unenforceable as against public policy"); Company 30(b)(6)

Dep., *attached as* Ex. 3, at 34:1-15 (recognizing charge-filing ban prohibition), 147:10-148:19 (acknowledging charge-filing bans in LCAs as unenforceable), 151:10-15 (same).

37. Employee Bunnell entered into a LCA on November 15, 2004 and thereafter worked for Cognis until he was terminated for poor job performance on March 2, 2006.  Op. at 5 n.6; *see also* Bunnell Last Chance Agreement, *attached as* Ex. 12; Lemenager Decl., *attached as* Ex. 17, ¶15.

38. Employee Hillman entered into a LCA on January 14, 2005 and thereafter voluntarily resigned from Cognis on July 31, 2008.  Op. at 5 n.7; *see also* Hillman Last Chance Agreement, *attached as* Ex. 13; Deposition of Moses Hillman ("Hillman Dep."), *attached as* Ex. 18, at 18:14-20.

39. Employee Johnson entered into a LCA on December 12, 2001 and continues to work for Cognis.  Op. at 5 n.8; *see also* Johnson Last Chance Agreement, *attached as* Ex. 14; EEOC's Response Brief in Opposition to Def.'s Mot. for Summary Judgment (Docket No. 32) at p. 25, EEOC's Resp. to Cognis Fact No. 29 (not disputing Johnson's continued employment by Cognis).

40. Employee Tholen entered into a LCA on January 6, 2006 and continues to work for Cognis.  Op. at 5 n.9; *see also* Tholen Last Chance Agreement, *attached as* Ex. 15; Deposition of Ed Tholen ("Tholen Dep."), *attached as* Ex. 19, at 8:4-6.

41. Employee Wright entered into a LCA on September 12, 2006 and thereafter worked for Cognis until he was terminated in 2008.  Op. at 6 n.10; *see also* Wright Last Chance Agreement, *attached as* Ex. 16; Wright Dep., *attached as* Ex. 20, at 22:5-8.

**F. Whitlow and the Five Other Claimants Suffered Harm as a Result of the Charge-Filing Ban Contained in the LCAs**

42. Each of the five employees who remained employed by Cognis while subject to an LCA with a charge filing ban suffered as a result of the LCAs because they believed that they were unable to file charges with the EEOC or were unprotected from potential discrimination during their employment with Cognis.  Op. at 6; *see also* Hillman Addendum, *attached as* Ex. 21 (wherein Hillman informed Cognis (1) " that he should not have to agree upon signature now, for things which have not happened and risk giving up rights pursuant to legal terminations," (2) "that he does not feel he should be put in a position to waive any claims or liabilities" and (3) that "he would sign [the Last Chance Agreement] under duress"); Hillman Dep., *attached as* Ex. 18, at 92:8-16 (discussing the Hillman Addendum), 114:21-115:14 (describing harm suffered by Hillman), 116:3-17 (same), 124:22-125:11 (same); 127:20-129:6 (same); Hillman Decl., *attached as* Ex. 22 (describing harm suffered by Hillman); Lemenager Dep., *attached as* Ex. 10, at 88:3-13 (showing Cognis understood the harm Hillman suffered under the LCA), 89:13-90:17 (showing Cognis took no positive action in response to Hillman's harm); 91:15-92:1 (showing that despite Hillman's professed concerns regarding giving up his rights, Cognis took no steps to alter the Last Chance Agreement); Johnson Decl.,

*attached as* Ex. 23 (describing Johnson's harm); Johnson Dep., *attached as* Ex. 24, at 15:15-17:1 (Johnson was so concerned about his rights under the LCA that he consulted an attorney for clarity about his right to contact an attorney in the future), 71:3-9 (Johnson understood the LCA to prevent him from contacting an outside agency or to pursue relief), 84:21-85:10 (Johnson felt "singled out" and "harassed" when Cognis asked him to sign the LCA), 87:3-10 (describing harm suffered by Johnson), 88:6-17 (describing Johnson's pursuit of counseling regarding harm), 90:11-17 (describing harm suffered by Johnson), 91:15-92:6 (describing Johnson's consultation with a doctor regarding harm), 95:15-96:1 (Johnson understood the LCA prevented him from making any complaint of discrimination to the EEOC or any other federal agency); Tholen Dep., *attached as* Ex. 19, at 93:11-22 (describing harm suffered by Tholen), 98:5-15 (Tholen understood that under the LCA he had no recourse to deal with any complaints he might have against Cognis), 99:9-100:22 (describing harm suffered by Tholen); 101:9-102:6 (learning of Whitlow's termination for his failure to agree to be bound by his LCA contributed to Tholen's harm); 102:2-105:4 (describing Tholen's fear that filing a charge could result in his termination); Wright Decl., *attached as* Ex. 25 (describing harm suffered by Wright); Wright Dep., *attached as* Ex. 20, at 76:18-77:3 (showing that Wright understood the LCA prevented him from complaining or seeking relief), 158:4-159:3 (Wright felt harmed by LCA's rights-stripping provisions), 159:19-24 (describing harm suffered by Wright).[2]

43.   Whitlow suffered harm as a result of his termination for refusal to be bound by the charge filing ban of the LCA.  Whitlow Dep., *attached as* Ex. 1, at 165:19-166:12.


# III. ARGUMENT

## A.   Summary Judgment Standard and This Court's December 12, 2011 Opinion

To prevail on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. p. 56(a).  "[A]ll facts and all reasonable inferences" must be viewed "in the light most favorable to [the nonmoving party]." *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 829 (7th Cir. 2007).  "[S]ummary judgment is appropriate and – in fact, is mandated –

---

[2] One of EEOC's claimants, Dave Bunnell, became unavailable for deposition during discovery because of a serious and ongoing medical crisis.  As of the filing of this brief, his condition is not significantly improved.  His experience is similar to other claimants' in that Bunnell was required to sign a Last Chance Agreement in order to maintain his employment with Cognis, and the Last Chance Agreement required him to give up the same rights that all the EEOC claimants were required to sign away.  *Compare* Bunnell Last Chance Agreement, *attached as* Ex. 12, *with* Whitlow Last Chance Agreement, *attached as* Ex. 2, Hillman Last Chance Agreement, *attached as* Ex. 13, Johnson Last Chance Agreement, *attached as* Ex. 14, Tholen Last Chance Agreement, *attached as* Ex. 15, *and* Wright Last Chance Agreement, *attached as* Ex. 16.

where there are no disputed issues of material fact and the movant must prevail as a matter of law." *Dempsey v. Atchison, Topeka & Santa Fe Ry. Co*., 16 F.3d 832, 836 (7th Cir. 1994).

In this case, the Court has already rejected Cognis's Motion for Summary Judgment and invited the EEOC to submit its own motion for summary judgment. The Court's ruling on Cognis's motion – and the factual and legal findings contained therein – are now "law of the case." "The doctrine of the law of the case creates a presumption against a court's reexamining *its own* rulings in the course of litigation. . . . . 'The doctrine of law of the case precludes reexamining a previous ruling *(unless by a higher court)* in the same case unless it was manifestly erroneous.'" *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.,* 481 F.3d 1002, 1004 (7th Cir. 2007) (quoting *Starcon Int'l, Inc. v. Int'l Bhd. of Boilermakers,* 450 F.3d 276, 278 (7th Cir. 2006) (emphasis added)).

The Court's findings and rulings in its December 12, 2011 decision  -- as well as the underlying facts of EEOC's claims and the governing legal precedent -- illustrate that EEOC is entitled to summary judgment on its claims both that Cognis retaliated against Whitlow by terminating him when he revoked his LCA and that Cognis retaliated against Whitlow and five other employees when Cognis offered them LCAs containing an ultimatum that required them to choose between continued employment and the right to file a charge. Accordingly, the only issue remaining in dispute in the case is the damages to which Whitlow and the five claimants are entitled and appropriate injunctive relief.

**B.      Cognis Retaliated Against Whitlow By Terminating Him Because He Engaged in Protected Activity When He Revoked His LCA Solely to Protect His Civil Rights.**

As this Court noted when it denied Cognis's Motion for Summary Judgment, to prevail on a direct evidence retaliation claim, the plaintiff must present direct evidence that "(1) [the victim] engaged in statutorily protected activity; (2) an adverse action was taken by his

employer; and (3) there was a causal connection between the activity and the adverse action."
Op. at 8 (citing *Sitar v. Indiana Dept. of Transp*., 344 F.3d 720, 728 (7th Cir. 2003)).  When this
Court considered the merits of Cognis's Motion for Summary Judgment, it found that the parties
did not dispute that Whitlow's termination constitutes an adverse job action.  Op. at 9.  The
Court also found that Cognis conceded that challenging the LCA was protected activity.  Op. at 9.
Thus with regard to Whitlow's termination, the "only dispute" between the parties "focuse[d] on
causation."  Op. at 10.  In the course of its Opinion, however, this Court went on to wholly reject
Cognis's theory of causation (that Whitlow was terminated for his job performance prior to May
10, 2011) and to find facts that Whitlow was terminated only because he revoked the LCA, a
protected activity.  Op. at 10-13.  Thus Whitlow's termination is unlawful retaliation, a
conclusion that is amply supported by the case law and public policy considerations.

       1.   There Is No Genuine Issue of Material Fact:  Cognis Terminated Whitlow
           Because He Engaged in Protected Activity

The facts demonstrate – and this Court found in its December 12, 2011 Opinion – that
Cognis terminated Whitlow on May 10, 2007 not for performance reasons as Cognis had claimed.
Op. at 20 & n.19.  Rather, this Court found that Cognis terminated Whitlow on May 21, 2007
because he refused to be bound by the LCA, which he "believed, correctly, restrained his civil
rights."  Op. at 12-13.  Thus, causation has been established.

Whitlow's sole reason for his refusal to be bound by the LCA was that he did not want to
give up his civil rights.  *See* Plaintiffs' Statement of Material Facts ("Fact") Nos. 16, 17, 25-27.
And Whitlow put Cognis on notice that this was the sole reason he revoked the LCA.  *See* Fact
Nos. 17, 27.  Indeed, Whitlow offered to be bound by an LCA if it did not require him to give up
his civil rights.  *See* Fact No. 17.  Nevertheless, Cognis refused to modify the LCA in any way.
*See* Fact Nos. 18-20.  Cognis refused despite the fact that Cognis was aware that the charge-

filing ban in the Last Chance Agreement was void as against public policy.  *See* Fact Nos. 28-29, 36.  And Cognis did not inform Whitlow either that it would not enforce the charge filing ban or that its purported purpose in including these provisions in the Agreement was to limit access to the grievance and arbitration process.  *See* Fact Nos. 21-23.

Those facts – which are not in dispute – establish that Whitlow's termination (an adverse action) occurred *because* he engaged in protected activity (revoking his LCA solely to protect his civil rights).  These undisputed facts thus establish the casual link between Whitlow's protected activity and his adverse job action.  As this Court said, "[H]ad Whitlow simply conceded, and decided to remain bound by all terms of the LCA, he would not have been terminated."  Op. at 13.

Title VII's anti-retaliation provisions exist, however, precisely because an employee is not required to "concede" to employer conduct that violates public policy.  An employee retains the right to object to prohibited conduct -- including by revoking a void agreement – without fear that the objection will result in an adverse job action like termination.

> 2. Established Case Law Supports the Conclusion that an Employer Engages in Unlawful Retaliation by Taking Adverse Action Against an Employee Who Opposes Practices that Interfere with His Right to File a Charge

The primary purpose of the anti-retaliation provision of Title VII is to ensure that employees have "unfettered access to statutory remedial mechanisms."  *Robinson v. Shell Oil*, 519 U.S. 337, 346 (1997).  Filing discrimination charges with the EEOC is one such "statutory remedial mechanism."  Indeed, charges play a critical role in the administration of Title VII.  The purpose of a charge of discrimination is to "place the EEOC on notice that someone . . . believes that an employer has violated [the federal laws against employment discrimination.]"  *EEOC v. Shell Oil Co*, 466 U.S. 54, 68 (1984).  Courts, thus, have not hesitated to find that waivers of the

right to file a charge are void as against public policy.  *See, e.g.*, *EEOC v. Cosmair*, 821 F.2d

1085, 1090 (5th Cir. 1987) ("We hold that an employer and an employee cannot agree to deny to

the EEOC the information it needs to advance [the public interest in preventing employment

discrimination].  A waiver of the right to file a charge is void as against public policy."); *EEOC v.*

*U.S. Steel Corp*., 671 F. Supp. 351, 357-59 (W.D. Pa. 1987); *see also Wastak v. Lehigh Valley*

*Health Network*, 342 F.3d 281, 291-92 (3rd Cir. 2003); *Faris v. Williams WPC-I, Inc*., 332 F.3d

316, 321 (5th Cir. 2003); *American Airlines v. Cardoza-Rodriguez*, 133 F.3d 111, 118 n.7;

*McCall v. U.S. Postal Serv*., 839 F.2d 664, 666 n* (Fed. Cir. 1988); *Carllicotte v. Carlucci*, 698

F.Supp. 944, 946-47 (D.D.C. 1988).  And Cognis has acknowledged that Cognis knew that the

ban on charge filing in its LCA indeed was void and unenforceable.  *See* Fact Nos. 28-29, 36.

Courts have long recognized that protected activity can take a variety of forms,

"'rang[ing] from filing formal charges to voicing informal complaints to superiors.'" *Casna v.*

*City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (quoting *Hertz v. Luzenac Am., Inc.*, 370

F.3d 1014, 1015 (10th Cir. 2004).  Revoking an agreement that contains a void prohibition on the

filing of charges falls within this range.  Not only did Whitlow revoke the Agreement, he

expressly informed the Company that he was doing so only to protect his civil rights.  *See* Fact

Nos. 16-17, 25-27.

The "preemptive" or anticipatory" retaliation cases confirm that Title VII prohibits an

employer from discriminating against an employee whose protected expression has not yet taken

the form of filing a written complaint  *See e.g.*, *Beckel v. Wal-Mart Assocs, Inc.*, 301 F.3d 621,

624 (7th Cir. 2002) (recognizing anticipatory retaliation as actionable under Title VII); *Johnson*

*v. ITT Aerospace/Commc'ns Div.*, 272 F.3d 498, 500-01 (7th Cir. 2001) (same); *Heuer v. Weil-*

*McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000) (noting that retaliation includes "efforts to induce a

claimant to drop her claim" as well as "efforts to deter or prevent the filing of a claim"); *see also*

*Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993) (concluding that "[a]ction taken

against an individual in anticipation of that person engaging in protected opposition to

discrimination is no less retaliatory than action taken after the fact"); *EEOC v. Bojangles Rests.,*

*Inc.*, 284 F.Supp.2d 320, 328 (M.D.N.C. 2003) (observing that "[a]n employer may not

discriminate against an employee who it fears will later file a charge, testify, assist, or participate

in an investigation or hearing").

By revoking the LCA when Cognis refused to modify the provisions of the LCA that

interfered with charge filing, Whitlow engaged in the protected activity of opposing a company

practice that interfered with his right to file a charge of discrimination – though Whitlow had not

yet filed a charge of discrimination.  That protected activity triggered his termination – and his

entitlement to the protection of the anti-retaliation provision of Title VII.  Any other conclusion

would be inconsistent with the critical role that charges play in protecting employees from

discrimination and would hamper EEOC enforcement efforts that depend on the filing of charges.

Any other conclusion also would have the anomalous result of allowing employers to insert in

their employee contracts unenforceable provisions that deter the filing of charges and provide no

protection to an employee who refuses to be bound by such a provision.

**C.     Cognis Retaliated Against Whitlow and the Other Victims by Requiring Them to
       Sign LCAs that Stripped Them of their Right to File Charges as a Condition of
       Continued Employment**

This Court's holding in response to Cognis's Motion for Summary Judgment that

"Cognis's threat of retaliation contained in the LCAs constitutes a retaliatory policy under Title

VII" establishes that EEOC is entitled to summary judgment that Cognis retaliated against

Whitlow and the other employees when it presented LCAs to them that required them to choose

between remaining employed and retaining the right to file a charge.  Op. at 18.  The Court noted that there is no "genuine issue of material fact as to what occurred with regards to the LCAs offered by Cognis in this case to Whitlow and the five other Cognis employees."  Op. at 13.  And the Court's decision accepting the theory that a promise of termination if the employee files a charge constitutes actionable retaliation is amply supported.

As this Court noted, when the Supreme Court described retaliation as any action that "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination, '" the Court recognized that "[a] reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former."  Op. at 15 (quoting *Burlington N. & Santa Fe. Ry. Co. v. White,* 548 U.S. 53, 63 (2006)).  "Threats of retaliation" as this Court also noted "certainly may 'dissuade[] a reasonable worker from making . . . a charge of discrimination.'"  Op. at 16.

Other courts, including those cited in the Court's Opinion at 16, have not hesitated to recognize that a threat of retaliation is unlawful.  *See* Op. at 16; *see also Walsh v. Irvin Stern's Costumes*, 2006 WL 2380379, at *2-3 (E.D. Pa. Aug. 15, 2006) (holding threat of bringing criminal charges against employee was materially adverse action; no harm or injury by carrying out threat is required), *attached as* Ex. 26 (all unpublished decisions, other than this Court's December 21, 2011 Opinion, in order by date); *EEOC v. Restaurant Co.*, 490 F. Supp. 2d 1039, 1050 (D. Minn. 2007) ("[A] plaintiff does not need to be actually harmed by the actions of a defendant to suffer an adverse employment action.  The proper analysis is whether the challenged action might dissuade a reasonable employee from engaging in protected activity.  A reasonable jury could find that a threatened reduction in hours could satisfy that standard."); *Highwood v. Indiana State Police*, 2007 WL 3286811, at *12 (N.D. Ind. Nov. 5, 2007) (holding

threat of discipline or termination was materially adverse action), *attached as* Ex. 26
(unpublished decisions); *EEOC v. Collegeville/Imagineering*, 2007 WL 2051448, at *7-8 (D.
Ariz. July 16, 2007) (holding threat of termination if employee continued protected activity in
the future was materially adverse action), *attached as* Ex. 26 (unpublished decisions); *see also
Robinson*, 519 U.S. at 346 (expressing concern over "allowing the *threat* of postemployment
retaliation to deter victims of discrimination from complaining to the EEOC") (emphasis added).

Another District Court in this circuit recently confirmed that a threat of termination
constitutes retaliation. *See U.S. E.E.O.C. v. Chrysler Group, LLC,* No. 08-C-1067, 2011 WL
693642, at *9-10 (E.D. Wis. Feb. 17, 2011) (threat of termination for engaging in protected
activity supports a claim for retaliation under Title VII), *attached as* Ex. 26 (unpublished
decisions).  That decision is fully consistent with Seventh Circuit law.  *See, e.g.*, *Pantoja v. Am.
NTN Bearing Mfg.,* 495 F.3d 840, 849 (7th Cir. 2007) (allowing retaliation claim based on
warnings of termination or other adverse actions to proceed to jury).

As this Court acknowledged, it would clearly have been unlawful for Cognis to have
terminated Whitlow because he filed a charge.  Threatening an employee with that unlawful
conduct is equally as likely to deter an employee from filing a charge and thus is equally
unlawful.  Were this not the case, employers would be free to threaten employees with unlawful
conduct and leave employees to try to determine whether the threat would be fulfilled.  The anti-
retaliation provisions of Title VII ensure that employees are not left vulnerable to that conduct.

## IV. CONCLUSION

Because there are no genuine issues of material fact and Cognis's termination of Whitlow
and requirement that Whitlow and the other victims agree as a condition of employment to be

bound to a Last Chance Agreement containing an unenforceable charge filing ban "might . . . .

dissuade[] a reasonable worker from making or supporting a charge of discrimination," the

EEOC respectfully requests that this Court grant EEOC's motion for summary judgment on

liability and leave damages as the sole issue to be determined at trial.


January 6, 2012                                    Respectfully submitted,

                                                   s/ Deborah Hamilton

                                                   John C. Hendrickson
                                                   Regional Attorney

                                                   Gregory Gochanour
                                                   Supervisory Trial Attorney

                                                   Deborah Hamilton
                                                   Bradley S. Fiorito
                                                   Trial Attorneys

                                                   United States Equal Employment
                                                   Opportunity Commission
                                                   500 W. Madison St., Ste. 2000
                                                   Chicago, IL 60661
                                                   (312) 869-8110
                                                   Deborah.Hamilton@eeoc.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on today's date, I caused **Plaintiff EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment** to be served, via the Court's Electronic Case Filing system, upon counsel to Defendant and counsel to Intervenor-Plaintiff.

January 6, 2011                                              <u>s/ Bradley S. Fiorito</u>

 

Bradley S. Fiorito
Attorney for Plaintiff EEOC
500 W. Madison St., Ste. 2000
Chicago, IL 60661
(312) 869-8109
Bradley.Fiorito@eeoc.gov