IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    Plaintiff,<br><br>STEVEN WHITLOW,<br>    Plaintiff/Intervenor<br>  v.<br><br>COGNIS CORP.,<br>    Defendant. | Case No. 2:10-CV-02182-MPM-DGB |

**PLAINTIFF EEOC'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

　　To avoid summary judgment in favor of the EEOC on liability, Cognis must point to a factual dispute that matters.  This is just what Cognis cannot do – because there is no factual dispute that matters.  Cognis admits that the Company required Steven Whitlow and each of five additional victims to sign a Last Chance Employment Agreement as a condition of continued employment – and admits that each Agreement contained a ban on filing charges, including with the EEOC and even as to future employer conduct.  Cognis also admits that Whitlow ceased working for the Company only after he revoked the Agreement solely to protect his civil rights.

　　On the basis of these admissions, EEOC's retaliation claims on behalf of Whitlow and the additional victims are capable of resolution now as a matter of law.  And, in its December 12, 2011 Opinion rejecting Cognis's motion for summary judgment, this Court has already made the legal determinations necessary to support the conclusion that Cognis violated the anti-retaliation provisions of Title VII by insisting that employees give up the right to file a charge as a condition of continued employment or face termination like Charging Party Steven Whitlow.

1

Protecting an employee's right to file a charge with the EEOC is at the root of protecting employees from discrimination:  Charges serve as EEOC's primary source of information about discrimination and thus as the basis for the vast majority of the agency's enforcement efforts. Allowing employers to communicate to employees that they must choose between their jobs and the right to a file charge surely would dissuade most employees from filing charges – and thus cut off at the knees EEOC's enforcement activities.

## II. RESPONSE TO COGNIS'S ADDITIONAL FACTS

1. In 2005, Whitlow began working as a Packager/Unloader, a position in which he was responsible for unloading raw materials, packaging finished goods for transport to customers, updating the shipping calendar, ordering materials, inputting information into the Company's inventory control (SAP) system, managing the weekly work schedule to ensure that work was completed by week's end, and other duties. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 29:17-25; 32:9-18; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶3.*

**RESPONSE:**  Undisputed, but immaterial:  Whitlow's job responsibilities are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

2. During his employment, Whitlow was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO (the "Union"), which has been party to a series of labor contracts with Cognis that governed certain terms and conditions of employment and contained a grievance and arbitration procedure. Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 33:2-11, 35:22-37:5; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶4; Lemenager Decl., Exh. A, attached as Exh. 1 hereto.

**RESPONSE:**  Undisputed, but immaterial:  Whitlow's union membership and the terms of the governing labor contracts are immaterial to the question whether Cognis retaliated against

Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

3. On May 12, 2006, Cognis issued Whitlow a formal Counseling after determining that he had committed multiple operator errors despite having previously been counseled following numerous operator errors. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 53:8-57:13; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶5; Whitlow Dep. Exh. 4 and Lemenager Decl. Exh. B, attached as Exh. 2 hereto.*

**RESPONSE**: Undisputed, but immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

4. On May 17, 2006, Cognis issued Whitlow a Verbal Warning after determining that he had made repeated SAP data entry errors. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 61:1-14; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶6; Whitlow Dep. Exh. 5 and Lemenager Dep. Exh. C, attached as Exh. 3 hereto*

**RESPONSE**: Undisputed, but immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

5. On November 30, 2006, Cognis issued Whitlow another Verbal Warning after determining that he had, among other things, failed to plan proactively to meet the department packaging schedule and, when asked by his supervisor about performing drumming tasks when time permitted stated, "that's not my job." *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 68:19-69:21; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶7; Whitlow Dep. Exh. 7 and Lemenager Decl. Exh. D, attached as Exh. 4 hereto.*

3

**RESPONSE:** Undisputed, but immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Steve Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

6. On March 3, 2007, Cognis issued Whitlow a Written Warning after determining that he had committed SAP entry errors. *Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶8; Lemenager Decl. Exh. E, attached as Exh. 5 hereto.*

**RESPONSE:** Disputed (*see* Exhibit 5 to Defendant's Response Brief (showing a March 8, 2007 date)) and immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

7. In April 2007, Cognis issued Whitlow a disciplinary suspension after determining that he had demonstrated multiple performance issues including drumming issues, SAP entry errors, safety duties not being completed, lack of proper job planning, and lack of timely completion of paperwork. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 72:14-77:21; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶9; Whitlow Dep. Exh. 9 and Lemenager Decl. Exh. F, attached as Exh. 6 hereto.*

**RESPONSE:** Undisputed, but immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

4

8. On April 9, 2007, Cognis issued Whitlow a formal Counseling for attendance issues. *Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶10; Lemenager Decl. Exh. G, attached as Exh. 7 hereto.*

**RESPONSE:** Undisputed, but immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

9. At the end of April 2007, Cognis determined that Whitlow continued to have performance issues and perform unsatisfactorily, including in terms of meeting packaging rates and demands (resulting in the need for overtime and, thus, added unnecessary cost), issues with SAP accuracy, and low productivity. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 78:15-79:1; 30(b)(6) Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 54:6-14, 56:8-9; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶11; Whitlow Dep. Exh. 11 and Lemenager Decl. Exh. H, attached as Exh. 8 hereto.*

**RESPONSE:** Disputed (*see* Ex. 8 to Defendant's Response Brief (showing a May 10, 2007 date)) and immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

10. Based on his continued poor work performance for which Whitlow had already received multiple warnings, on May 10, 2007, Cognis decided to terminate his employment. *Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 50:8-57:1, 76:10-16; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶11; Lemenager Decl. Exh. H, attached as Exh. 8 hereto.*

**RESPONSE**: Disputed (*see* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 3-7 at ¶2-4, 12-14, 25-

5

27, 30-33 (Cognis terminated Whitlow on May 21, 2007 -- not May 10, 2007) and immaterial: Whitlow's disciplinary history and job performance prior to May 10, 2007 are immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.  Additionally, even if Whitlow had been terminated on May 10, 2007, the material question at issue is whether Cognis retaliated against Whitlow by requiring him to sign – as a condition of employment – a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights.

11. After making the decision to terminate Whitlow's employment, Cognis then decided to offer Whitlow a Last Chance Agreement based on his long-term employment, which it [sic] something it had done for some but not all other long-term employees. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 87:17-88:2; Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 49:5-51:14, 54:6-23; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶12.*

**RESPONSE:**  Disputed (*see* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 3-7 at ¶2-4, 12-14, 25-27, 30-33 (Cognis terminated Whitlow on May 21, 2007 -- not May 10, 2007)) and immaterial: Even if Cognis had terminated Whitlow before presenting him the LCA, the material question at issue is whether Cognis retaliated against Whitlow by requiring him to sign – as a condition of employment – a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights..

6

12. No Cognis policy, benefit plan, or other source gives employees a right to receive an LCA, and it was not part of the Company's normal disciplinary process. *Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶12.*

**RESPONSE**: Undisputed but immaterial: the fact that an employee does not have a right to a Last Chance Agreement is immaterial to the question whether Cognis retaliated against Whitlow and the Additional Victims by requiring them to sign -- as a condition of employment -- a Last Chance Agreement that required them to give up their rights to file charges with the EEOC and the right to pursue relief for future discrimination, and terminating Whitlow when he sought to protect his civil rights.

13. Cognis intended through the language and implementation of the LCA merely to avoid arbitration (that would otherwise be compelled by the labor contract) if Whitlow or other employees who signed the LCAs were later discharged, not because of any concern about EEOC charges. *Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 125:4-131:7.*

**RESPONSE:** Disputed. *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Ex. 7 (Defendant's Responses to Plaintiff EEOC's Third Set of Requests for Admissions at Nos. 6-8 (wherein Cognis denies that the "sole purpose" of the LCA's provisions was to avoid arbitration)); *id.*, Undisputed Material Facts, p. 4-7 at ¶6-9, 34-35 (showing the terms of the LCAs to go beyond avoiding arbitration), ¶23 (Cognis never informed employees that its purpose was to avoid arbitration), ¶17-20, 25-27, 30-33 (after Cognis denied Whitlow's request to modify the LCA so that it removed only those provisions that restricted his civil rights, Cognis – knowing that Whitlow then revoked the LCA solely out of concern for its effects on his civil rights – terminated him, solely for revoking the LCA).

14. On May 10, 2007, when Cognis representatives met with Whitlow and Union representatives and explained to Whitlow that his performance had failed to meet Company expectations, Whitlow understood that his employment was being terminated for operating errors but that he could sign the LCA if he wanted an additional opportunity to return to work. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 78:14-86:24.*

**RESPONSE:**  Disputed.  *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 3-7 at ¶2-4, 12-14, 25-27, 30-33 (Cognis terminated Whitlow on May 21, 2007 -- not May 10, 2007).

15. On May 11, 2007, Whitlow signed the LCA, submitted it to Human Resource Manager Beverly Lemenager ("Lemenager"), and returned to work. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 87:17-88:16; Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 62:22-63:4; See also Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 87:17-88:2; Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 49:5-51:14, 54:6-23; Whitlow Dep. Exh. 12, attached to EEOC's MSJ as Exh. 2.*

**RESPONSE:**  Undisputed.

16. On May 17, 2007, the Union filed a grievance on Whitlow's behalf challenging the termination of his employment. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 101:20-103:10; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶13; Whitlow Dep. Exh. 13 and Lemenager Decl. Exh. I, attached as Exh. 9 hereto.*

**RESPONSE:**  Disputed (*see* Ex. 9 to Defendant's Response Brief (showing union challenged "unjust discipline leading to Step 5 termination *which has been reduced to Step 3 with a last chance agreement*") (emphasis added)) and immaterial:  the union's grievance regarding Whitlow is immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights, particularly because EEOC did not participate in the grievance process.

17. On May 21, 2007, Whitlow revoked the LCA; that decision returned him to the pre-LCA status quo that his employment was terminated for poor work performance per Cognis' original decision. *Lemenager Dep., attached to EEOC's MSJ as Exh. 3, at 76:10-77:1, 80:16-81:22.*

**RESPONSE:** Disputed. *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 3-7 at ¶2-4, 12-14, 25-27, 30-33 (Cognis terminated Whitlow on May 21, 2007 -- not May 10, 2007); *id*. at ¶18-20 (showing that Cognis management conferred about Whitlow's concern about his civil rights prior to terminating him on May 21, 2007).

18. The Union pursued Whitlow's discharge grievance, and arbitration hearings were held on November 30, 2007, and January 11, 2008, at which Whitlow was represented, testified, offered witnesses and documentary evidence, and had the right to crossexamine company witnesses. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 120:20-123:18; Whitlow Dep. Exh. 18 and Lemenager Decl. Exh. J, attached as Exh. 10 hereto; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶14.*

**RESPONSE:** Undisputed, but immaterial: the union's grievance regarding Whitlow is immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights, particularly because EEOC did not participate in the grievance process and because the arbitrator made no decision regarding the legality of the charge filing ban in the Last Chance Agreement.

19. On December 19, 2007, Whitlow filed an EEOC Charge in which he charged race discrimination but said nothing alleged retaliation, the LCA, or any purported protected activity surrounding the LCA. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 141:1-143:13; Whitlow Dep. Exh. 22, attached as Exh. 11 hereto.*

**RESPONSE:** Undisputed, but immaterial: the language of Whitlow's charge of discrimination is immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his

9

right to file a charge with the EEOC and the right to pursue relief for future discrimination and terminating him when he sought to protect his civil rights.

20. On March 12, 2008, while Whitlow's Charge was still pending before the EEOC, the arbitrator upheld Whitlow's discharge and found that it was for just cause. *Whitlow Dep., attached to EEOC's MSJ as Exh. 1, at 119:11-123:18; Whitlow Dep. Exh. 18 and Lemenager Decl. Exh. J, attached as Exh. 10 hereto; Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶14.*

**RESPONSE:** Undisputed, but immaterial:  an arbitration decision with regard to Whitlow is immaterial to the question whether Cognis retaliated against Whitlow by requiring him to sign -- as a condition of employment -- a Last Chance Agreement that required him to give up his right to file a charge with the EEOC and the right to pursue relief for future discrimination, and terminating him when he sought to protect his civil rights, particularly because EEOC did not participate in the grievance process and because the arbitrator made no decision regarding the legality of the charge filing ban in the Last Chance Agreement.

21. Nathaniel Johnson ("Johnson") signed an LCA on December 12, 2001, that was in effect for two years, and he has worked at the Kankakee plant ever since and admits he has never had a complaint regarding alleged discrimination or harassment during his employment with Cognis. *Johnson Dep., attached to EEOC's MSJ as Exh. 24, at 42:2-22, 45:3-46:24, 51:1-19, 56:20-23, 67:5-69:17, 74:9-15; Johnson Dep. Exh. 12, attached to EEOC's MSJ as Exh. 14.*

**RESPONSE:** Disputed.  *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 7-9 at ¶34-36, 39, 42 (showing Johnson is participating in this lawsuit as an Additional Victim, thus he has a complaint of discrimination and has engaged in protected activity; describing harm).

22. Moses Hillman ("Hillman") signed an LCA on January 14, 2005, that was in effect for two years, and he continued working at Cognis until he voluntarily retired on July 31, 2008, and admits he never even considered going to the EEOC about any issues during his employment with Cognis because there were no issues to go to the EEOC about from his perspective.

10

*Hillman Dep., attached to EEOC's MSJ as Exh. 18, at 18:14-19:2, 93:12-22, 108:16-110:5; Hillman Dep. Exh. 16, attached to EEOC's MSJ as Exh. 13*.

**RESPONSE**: Disputed. *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 7-9 at ¶34-36, 38, 42 (showing Hillman is participating in this lawsuit as an Additional Victim, thus he has a complaint of discrimination and has engaged in protected activity; describing harm).

23. Ed Tholen ("Tholen") signed an LCA on January 6, 2006, that was in effect for two years, and he has worked at the Kankakee plant ever since and admits he never even considered going to the EEOC about any issues during his employment with Cognis because there were no issues to go to the EEOC about from his perspective. *Tholen Dep., attached to EEOC's MSJ as Exh. 19, at 11:4-8, 35:9-23, 63:9-18, 70:13-71:5; Tholen Dep. Exh. 1, attached to EEOC's MSJ as Exh. 15*.

**RESPONSE**: Disputed. *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 7-9 at ¶34-36, 40, 42 (showing Tholen is participating in this lawsuit as an Additional Victim, thus he has a complaint of discrimination and has engaged in protected activity; describing harm).

24. Keith Wright ("Wright") signed an LCA on September 12, 2006, that was in effect for two years, worked for Cognis until his employment was terminated in 2008, was never told that his employment was terminated for anything whatsoever having to do with the LCA, and admits he was unaware of the EEOC and did not consider contacting the EEOC until months or even years after his employment ended. *Wright Dep., attached to EEOC's MSJ as Exh. 20, at 22:5-8, 79:21-80:12, 103:19-104:7; Wright Dep. Exh. 9, attached to EEOC's MSJ as Exh. 16*.

**RESPONSE**: Disputed. *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 7-9 at ¶34-36, 41-42 (showing Wright is participating in this lawsuit as an Additional Victim, thus he has a complaint of discrimination and has engaged in protected activity; describing harm).

11

25. Dave Bunnell ("Bunnell") signed an LCA on November 15, 2004, and worked at the Kankakee plant until his employment was terminated for poor job performance on March 2, 2006, and Cognis has no record of him making a discrimination or harassment complaint or filing an EEOC Charge. *Lemenager Decl., attached to EEOC's MSJ as Exh. 17, at ¶15; Lemenager Decl. Exh. K, attached to EEOC's MSJ as Exh. 12.*

**RESPONSE:**  Disputed.  *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment (Docket Item No. 39), Undisputed Material Facts, p. 7-9 at ¶34-37, 42 n. 2 (showing Bunnell is participating in this lawsuit as an Additional Victim, thus he has a complaint of discrimination and has engaged in protected activity).

### III. ARGUMENT

**A. The Undisputed Material Facts Establish that Whitlow's May 21, 2007 Termination Violates the Anti-Retaliation Provisions of Title VII**

Despite Cognis's focus on Whitlow's conduct prior to May 10, 2007, this case – and thus EEOC's summary judgment motion as to Whitlow – is not about whether Cognis engaged in retaliation by deciding prior to May 10, 2007 to offer Whitlow a Last Chance Agreement to address performance problems.  EEOC's motion is about the content of the Agreement that Cognis insisted upon (specifically the charge-filing ban) and Cognis's response to Whitlow (terminating him) when he sought modification of the Agreement to protect his civil rights.

Cognis admits the facts necessary to resolve liability in this case now as a matter of law:

   • On May 10, 2007, Cognis presented Whitlow a Last Chance Agreement that stated that it was "in lieu of termination" (Cognis Resp. to Undisputed Fact No. 4);

   • That Agreement required Whitlow to give up the right to complain to any federal agency and made no exception for the EEOC – and covered conduct that had yet to occur (Cognis Resp. to Undisputed Fact Nos. 5-6);

   • Whitlow continued working for the Cognis after May 10, 2007, and Cognis had no further problems with his performance (Cognis Resp. to Undisputed Fact Nos. 13 & 14);

   • On May 21, 2007, Whitlow asked Cognis to modify the Agreement so that he could retain his civil rights (Cognis Resp. to Undisputed Fact No. 16);

12

- Cognis management conferred, refused to modify the Agreement, and did not tell Whitlow he retained the right to file a charge (Cognis Resp. to Undisputed Fact Nos. 18-22);

- Whitlow revoked the Agreement only because it restrained his civil rights (Cognis Resp. to Undisputed Fact No. 26).

Then Whitlow was terminated.

Whether the Company's initial action with regard to Whitlow on May 10, 2007 is characterized as a termination (on which Cognis insists) followed by Whitlow's continued employment (which is not disputed) is of no moment. There is no dispute that Whitlow did not cease working for the Company until May 21, 2007 when he revoked his Last Chance Agreement after the Company refused to modify it to allow him to protect his civil rights.

Those agreed facts constitute direct evidence of retaliation[1]: Cognis terminated Whitlow (an adverse action) because he revoked the Agreement to protect his civil rights (protected activity). So long as Whitlow was willing to agree to all the terms in the Agreement (including the charge-filing ban), he remained employed. Had Whitlow been willing to give up his civil rights, he could have continued to work for Cognis.

Any suggestion that there is no actionable retaliation because Cognis somehow lacked the requisite "intent" flies in the face of governing law. To prove an intentional violation of the anti-retaliation provisions, EEOC is not required to prove the Company intended to violate the law; EEOC must prove only that the Company took an adverse action against an employee because the employee engaged in protected activity, which EEOC has done by demonstrating the Whitlow was terminated on May 21, 2007 because he would not give up his civil rights.

---

[1] In this Reply, EEOC relies only on facts that Cognis itself characterizes as undisputed, but it would be perfectly appropriate for this Court to rely on many of the facts that Cognis has claimed are in dispute. Cognis routinely fails to follow the proper procedure for disputing a fact – to identify record evidence that actually illustrates a contradiction. For example, in response to EEOC's Fact No. 2, Cognis cites a range of testimony that does not in fact contradict the stated fact and Cognis then relies on its response to Fact 2 in response to a series of other facts, though its response to Fact No. 2 actually does not address the issue. *See, e.g.* Cognis's Resp. to Facts 3, 12, 17.

**B. The Undisputed Material Facts Establish that Cognis Engaged in Retaliation by Requiring Employees to Choose Between Giving Up the Right to File a Charge or Continued Employment**

Like Whitlow, with regard to each of the additional victims who remained employed subject to a Last Chance agreement containing the same charge filing bar, there is no factual dispute that precludes resolving liability now. Cognis, in its brief to this Court, cannot deny:

• Each of the additional victims signed an Agreement that stated he remained employed "in lieu of termination" by "accept[ing] the terms of the [Last Chance] Agreement as his last chance to retain his employment." *See* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment, Exs. 2, 12-16 (the LCAs)

• The terms of the Agreements include an agreement "not to commence any action or proceeding" before any "federal . . . agency [or] civil rights commission." Cognis Response to Material Fact Nos. 35; *see also* EEOC's Memorandum of Law in Support of Its Motion for Summary Judgment, Exs. 2, 12-16 (the LCAs)

• Cognis never informed these additional victims that the Agreement did not mean exactly what it said with regard to charge filing.

Based on the agreed facts, this Court can answer now the legal question whether requiring employees as a condition of continued employment to sign an Agreement giving up the right to commence any proceeding before a federal agency is retaliation under *Burlington*'s "might . . . dissuade[] a reasonable worker" standard (a standard that Cognis does not even mention). *Burlington N. v. White*, 548 U.S. 53, 73 (2006); *see also* Op. at 13 (noting the question "Is Cognis's Act of Offering Employees LCAs Retaliation" is a "legal" question).

As cited in EEOC's opening brief, the Supreme Court went on to answer this legal question, saying, "A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former." *Burlington N.*, 548 U.S. at 73. The Agreements at issue presented employees with just such a prohibited choice between charge filing and employment – a choice the Supreme Court said would obviously deter charge filing.

In a futile attempt to advance its position, Cognis makes several arguments. First, Cognis

14

relies on cases involving severance agreements that have permitted post-employment waivers of an employee's right to pursue a discrimination claim. Those cases are distinguishable both because they arise in different factual circumstances (at the end of the employment relationship when there is no risk of future discrimination) and because many of them do not even discuss the public interest involved in an employee's waiver of the right to file a charge, which implicates EEOC's enforcement process. See EEOC's Memorandum of Law in Opposition to Cognis's Motion for Summary Judgment at pp. 39-43 (distinguishing severance cases). Accordingly – as this court previously held, Op. at 17-18 – the severance cases do not provide support for the inclusion of a charge-filing ban in a Last Chance Agreement.

Second, Cognis suggests that there can be no retaliation because the additional victims engaged in no protected activity prior to being offered the Last Chance Agreements. Established case law – including this Court's prior opinion at p. 16 -- recognizes that to state a claim regarding an employer threat, an employee need not engage in protected activity and test whether the employer will make good on the threat. *See, e.g., EEOC v. Bojangles Rest., Inc.*, 284 F. Supp. 2d 320, 328 (M.D.N.C. 2003) ("[Title VII] covers preemptive employer actions.").

This case can be analogized to *Sauers v. Salt Lake County*, in which the Tenth Circuit permitted a plaintiff's retaliatory reassignment claim to go forward though the reassignment preceded any protected activity but the employer had expressed a fear of the filing of a complaint of discrimination. 1 F.3d 1122, 1128 (10th Cir. 1993). Here, the language of the Last Chance Agreement itself reflects the employer's fear of – and express intent to deter – the filing of charges from employees to whom the employer has communicated performance problems and a change in status. At the same time and in the same document (the Last Chance Agreement), an employee's performance problems are recounted, the employee is informed of last chance

15

employment, and the employee must give up the right to commence a proceeding with the EEOC.

Third, Cognis suggests that there can be no retaliation because the additional victims suffered no material adverse job action as a result of the Last Chance Agreements and thus (according to Cognis) no harm. Cognis simply ignores both the harm the charge-filing ban inflicted on EEOC's ability to communicate with employees as well as the employees' testimony of its emotional effect, regardless of whether these employees intended to file charges.

When *Burlington* defined an adverse employment action as any conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," the Court held it is an objective test. 548 U.S. at 69; *EEOC v. Restaurant Co.*, 490 F. Supp. 2d 1039, 1050 ("[P]laintiff does need to be actually harmed … to suffer an adverse employment action.") The purpose of the materially adverse employment action test is to "separate significant from trivial harms." 548 U.S. at 68. There should be no doubt that misleading employees into giving up the protected right to file a charge, through the threat of termination, is not a trivial harm.

While interference with the ability to communicate with the EEOC is not a traditional material adverse job action, were Cognis's position accepted, employers would be free to insist upon prospective charge filing waivers from all employees, and avoid liability until an employee could demonstrate the intent to file a charge – regardless of the emotional effects on the employee and the obvious limitation on free communication with the EEOC.

Further, EEOC's motion does not seek to resolve the extent of the harm suffered by the additional victims or damages due to them. As EEOC has stated, EEOC moves for summary judgment only on the question of liability, leaving damages to be determined at trial, and leaving Cognis free to argue at that time that the additional victims suffered no harm.

The Seventh Circuit has already held that an employer's policy conditioning an employment

16

*benefit* on whether an employee forgoes the right to engage in the protected activity of filing a charge is facially retaliatory. *See EEOC v. Bd. of Governors*, 957 F.2d 424, 430 (7th Cir. 1992); *see also* cases cited at pp. 36-37 of EEOC's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. If an employer cannot condition receipt of an employment *benefit* on giving up the right to file a charge, there surely is no reason to permit an employer like Cognis to condition *employment itself* on giving up the right to file a charge. Law and logic compel the conclusion that Cognis engaged in unlawful retaliation by informing employees they had to give up the right to file a charge with the EEOC as a condition of continued employment.

## IV. CONCLUSION

Because there are no genuine issues of material fact, and because Cognis's termination of Whitlow and requirement that Whitlow and the other victims agree as a condition of employment to be bound to a Last Chance Agreement containing an unenforceable charge-filing ban "might . . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination," the EEOC respectfully requests that this Court grant EEOC's motion for summary judgment on liability and leave damages as the sole issue to be determined at trial.

February 21, 2012                               Respectfully submitted,

                                                s/ Deborah Hamilton

                                                John C. Hendrickson
                                                Regional Attorney

                                                Gregory Gochanour
                                                Supervisory Trial Attorney

                                                Deborah Hamilton
                                                Bradley S. Fiorito
                                                Trial Attorneys

17

United States Equal Employment
Opportunity Commission
500 W. Madison St., Ste. 2000
Chicago, IL 60661
(312) 869-8110
Deborah.Hamilton@eeoc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on today's date, I caused **Plaintiff EEOC's Reply in Support of Its Motion for Summary Judgment** to be served, via the Court's Electronic Case Filing system, upon counsel to Defendant and counsel to Intervenor-Plaintiff.

February 21, 2012                s/ Bradley S. Fiorito

                                 Bradley S. Fiorito
                                 Attorney for Plaintiff EEOC
                                 500 W. Madison St., Ste. 2000
                                 Chicago, IL 60661
                                 (312) 869-8109
                                 Bradley.Fiorito@eeoc.gov