UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, </br></br>Plaintiff, </br></br>STEVEN WHITLOW, </br></br>Intervenor Plaintiff, </br>v. </br></br>COGNIS CORPORATION, </br></br>Defendant. | Case No. 10-CV-2182 |

**OPINION**

This case is before the court for ruling on the Motions for Summary Judgment (#38; #40) filed by the Plaintiff, Equal Employment Opportunity Commission ("EEOC"), and the Intervenor Plaintiff, Steven Whitlow ("Whitlow"). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Plaintiffs' Motions for Summary Judgment (#38; #40) are GRANTED in part and DENIED in part.

**PROCEDURAL BACKGROUND**

On December 12, 2011, this court entered an Opinion (#35) denying the Motion for Summary Judgment (#29) filed by the Defendant, Cognis Corporation ("Cognis"). In the Opinion (#35), this court concluded that Cognis was not entitled to summary judgment because Cognis failed to establish that it was entitled to judgment as a matter of law on Plaintiffs' claims of retaliation. This court granted Plaintiffs leave to file a motion for

summary judgment solely on the issue of liability. Plaintiffs accepted this opportunity and filed Motions for Summary Judgment (#38; #40) on January 6, 2012. Plaintiffs argued that they were entitled to summary judgment on the issue of liability with regard to Whitlow, and each of the other employees[1] who were required to sign Last Chance Agreements ("LCAs") as a condition of continued employment with Cognis. On February 6, 2012, Cognis filed a Response (#41) arguing that factual questions on material elements of Plaintiffs' retaliation claims prevent an entry of summary judgment in Plaintiffs' favor.

**FACTS**

The relevant facts in this case remain unchanged, therefore this court adopts the factual summary contained in this court's prior Opinion (#35). However, when this court considered Cognis's Motion for Summary Judgment (#29), this court construed the evidence in the light most favorable to the Plaintiffs and drew all reasonable inferences in Plaintiffs' favor. In ruling on Plaintiffs' Motions for Summary Judgment (#38; #40), this court is now required to construe the evidence in the light most favorable to Cognis and draw all reasonable inferences in Cognis' favor.

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for

---

[1]There are five Cognis employees, in addition to Whitlow, who received LCAs as their sole alternative to termination. These employees, which will be collectively referred to as "other employees" are as follows: (1) Dave Bunnell; (2) Moses Hillman; (3) Nathaniel Johnson; (4) Ed Tholen; and (5) Keith Wright.

summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Conclusory allegations not supported by the record are not enough to withstand summary judgment. Basith v. Cook Cnty., 241 F.3d 919, 928 (7th Cir. 2001).

## ANALYSIS—RETALIATION CLAIMS

### I. Title VII Retaliation Standard

Employers are prohibited from retaliating against an employee for complaining about discrimination that violates Title VII. 42 U.S.C. § 2000e-3(a). The language of the relevant statute is as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful

> employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a). Retaliation, by its nature, generally requires two events: (1) a protected activity by the employee; and (2) discrimination by the employer because of the protected activity. This court will refer to these two events, respectively, as: (1) the "protected activity," and (2) the "adverse employment action."

Although a protected activity is generally required to state a valid Title VII retaliation claim, courts have found that in certain instances, a plaintiff need not undertake protected activity to successfully establish a retaliation claim. See, e.g., Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993) ("Action taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact; consequently, we hold that this form of preemption retaliation falls within the scope of 42 U.S.C. § 2000e-3(a)."); Beckel v. Wal-Mart Assoc., Inc., 301 F.3d 621, 624 (7th Cir. 2002) (citing Sauers approvingly, stating "[s]uch a threat would be a form of anticipatory retaliation, actionable as retaliation under Title VII."). For example, in Sauers, the defendant allegedly sexually harassed the plaintiff, and before the plaintiff had taken any protected activity, the defendant reassigned the plaintiff. Sauers, 1 F.3d at 1128. The court reasoned that because the evidence demonstrated that the defendant feared a sexual harassment lawsuit by the plaintiff and the plaintiff's reassignment occurred just two days after the defendant expressed fear of a lawsuit, a jury could permissibly infer that the reassignment was causally connected to the fear of suit. Id. The court concluded that based

on these facts, the plaintiff successfully established a *prima facie* case of Title VII retaliation, even though the plaintiff never took any protected activity. Id.

## II. Plaintiffs' Theories of Retaliation

Plaintiffs advance two separate theories of retaliation. Plaintiffs' first theory[2] is that Whitlow took protected activity by challenging and revoking the LCA and was then fired in retaliation for his actions by Cognis. Plaintiffs' second theory[3] is that the act of requiring Whitlow and the other employees to agree to the terms of the LCA in lieu of termination constitutes prohibited retaliation. This court will address each theory separately below.

Initially, this case is somewhat unusual, as it is not often that a plaintiff moves for or is granted summary judgment on a Title VII retaliation claim. One reason for this is that plaintiffs often do not have any direct evidence of retaliation, and therefore must proceed solely under the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). When proceeding under the indirect method, even if the plaintiff is able to establish the *prima facie* case, a genuine issue of material fact is often present regarding whether the employer's nondiscriminatory reason for taking the adverse employment action is simply pretext for unlawful retaliation. In contrast, when proceeding under the direct method of retaliation, as Plaintiffs are in this case on both theories of retaliation, summary judgment in favor of a plaintiff is possible, in certain instances. The

---

[2]This theory is only applicable to Intervenor Plaintiff Whitlow, as he is the only Cognis employee who refused to be bound by the LCA.

[3]This theory is applicable to Whitlow as well as the other employees because they all were offered the same ultimatum—agree to the LCA or accept your termination.

Seventh Circuit has explained where summary judgment might be appropriate for a plaintiff in a retaliation case as follows:

> The plaintiff in a retaliation case should have two . . . distinct routes to obtaining/preventing summary judgment. One, the more straightforward, the one that is unrelated to <u>McDonnell Douglas</u>, is to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity . . . and as a result suffered the adverse employment action of which he complains. **<u>If the evidence is uncontradicted, the plaintiff is entitled to summary judgment.</u>** If it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation.

<u>Stone v. City of Indianapolis Pub. Util. Div.</u>, 281 F.3d 640, 644 (7th Cir. 2002) (emphasis added).

### A. *Theory #1—Retaliation Against Whitlow*

Plaintiffs, under the first theory of retaliation, argue that Whitlow is entitled to summary judgment because he has direct evidence on each element of the *prima facie* case and this evidence is uncontradicted by any <u>genuine</u> issue of material fact. To satisfy the direct method for a retaliation claim, a plaintiff must present direct evidence that: (1) he engaged in a statutorily protected activity; (2) an adverse action was taken by his employer; and (3) there was a causal connection between the activity and the adverse action. <u>Sitar v. Indiana Dept. of Transp.</u>, 344 F.3d 720, 728 (7th Cir. 2003). Notably, if there is direct evidence of each of these elements, the intent of the defendant is irrelevant to the question of liability under Title VII for retaliation. See <u>EEOC v. Board of Governors</u>, 957 F.2d 424, 428 (7th Cir. 1992) ("When an employee's participation in statutorily protected activity is the

6

determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent.").

Initially, Cognis concedes that there was an adverse action taken against Whitlow when his employment with Cognis terminated on May 21, 2007. Cognis also does not dispute that Whitlow engaged in statutorily protected activity on May 21, 2007. On May 21, 2007, Whitlow took two separate actions: (1) he asked Beverly Lemenager if the LCA could be modified so that he could retain his civil rights; and (2) after being informed that the LCA would not be modified under any circumstances, Whitlow revoked the LCA because it restrained his civil rights.[4] Although Whitlow's first action was protected activity, there is no direct evidence that Whitlow suffered an adverse action as a result of his request to modify the LCA—therefore, under the direct method, this protected activity could not form the basis for a successful retaliation claim.

Whitlow's act of opposing the LCA and revoking his agreement to the LCA because it restrained his civil rights also was protected activity. The LCA, by its clear language, threatens retaliation for protected activity. Cognis' requirement that Whitlow be subject to an agreement restraining his statutory rights to avoid termination is an unlawful employment practice. Therefore, opposing this practice by revoking his agreement to the LCA certainly qualifies as protected activity. See 42 U.S.C. § 2000e-3(a) ("[B]ecause he has opposed any

---

[4]Defendants do not dispute this fact, but simply argue that it is immaterial under their theory of the case. See Defendant's Response (#41), p. 20.

7

practice made an unlawful employment practice by [Title VII] . . . ."). Therefore, Whitlow's act of revoking his agreement to the LCA on May 21, 2007 was protected activity.

After concluding that it is uncontested that Plaintiff has satisfied the first two elements of the *prima facie* case, the only question is whether there was a causal connection between Whitlow's act of revoking the LCA and his termination.[5] Cognis continues to rely on an argument that this court previously explained "defies simple logic." Specifically, Cognis argues that the decision to terminate Whitlow occurred on or before May 10, 2007, and any protected activity taken by Whitlow after this date could not possibly have any impact on the decision made on or before May 10, 2007. This argument is flawed and does not create a *genuine* issue of material fact regarding causation.[6]

First, Cognis' argument ignores the undisputed fact that the LCA Whitlow signed contained the following unambiguous language: "Cognis has decided to offer Whitlow one last chance to continue his employment in lieu of termination . . . ." This fact alone makes it clear that the unequivocal decision to terminate Whitlow was certainly not made on or before May 10, 2007. Second, it is undisputed that Whitlow continued to work at Cognis after May 10, 2007, and there is no indication that he would have been terminated so long as he agreed

---

[5]Cognis implicitly concedes this point as it argues only that "there is a genuine issue of material fact regarding whether the alleged protected activity was causally connected to Whitlow's discharge."

[6]The Seventh Circuit has explained that: "An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party. The judge must ask whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The existence of a mere scintilla of evidence supporting a [party's] position is insufficient; there must be evidence on which a jury could reasonably find for the [party]. Insolia v. Phillip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000).

8

to be bound by the terms of the LCA. Third, Cognis concedes that Whitlow's revocation of the LCA triggered his termination.[7] Cognis' argument, in essence, asks this court to ignore its decision to offer Whitlow a LCA in lieu of termination and to ignore that Whitlow continued to work at Cognis after May 10, 2007.

Moreover, the absurdity of Cognis' argument can be highlighted by a factual comparison. Assume an employer required each of its new employees to sign an agreement that they would not take statutorily protected activity, and if they did, their employment would immediately be terminated. Additionally, assume that the employer made it very clear to each new employee that they would not be hired unless they agreed to this condition of employment. One particular employee, after working for the employer for two years, informed the employer that he no longer was willing to be bound by the agreement because he felt he had been discriminated against and would be filing a complaint with the EEOC. The employer immediately fired the employee for refusing to be bound by their agreement. The employer then argues that they did not retaliate against the employee by firing him—rather, when the employee informed the employer that he no longer was willing to be bound by the agreement, they merely reverted to the pre-agreement status where the employer would not hire the employee unless the agreement was signed. Clearly, based on this hypothetical situation, which is indistinguishable from Cognis' treatment of Whitlow, a

---

[7]Defendant, in its Response (#41), explains that "[o]n May 21, 2007, Whitlow revoked the LCA; that decision returned him to the pre-LCA status quo that his employment was terminated for poor work performance per Cognis' original decision."

9

jury could not reasonably conclude that the employee's revocation of the agreement was not the direct cause of his termination.

No reasonable trier of fact could find that the Whitlow's revocation of the LCA was not the direct cause of Whitlow's termination from Cognis on May 21, 2007. Therefore, on the issue of whether Cognis retaliated against Whitlow by terminating his employment on May 21, 2007 after he took protected activity by revoking his agreement to the LCA, this court finds that there is no genuine issue of material fact and that Whitlow is entitled to judgment as a matter of law.[8]

Even if a jury could reasonably accept Cognis' interpretation of the facts, there remains direct evidence of causation. Defendant explains in its Response (#41) that:

> The Company's evidence demonstrates that Whitlow's employment was not terminated because he challenged or revoked the LCA; rather when he elected not to enter into the LCA, the Company reverted to the pre-LCA status quo which was that Whitlow's employment was terminated for poor performance (which . . . was a decision made before May 10, 2007, and before any discussion of a potential LCA ever even began).

Defendant acknowledges that it reverted to the pre-LCA status quo when Whitlow "elected not to enter into the LCA." Defendant attempts to distinguish this action from the revocation of the LCA—however, this is simply not supported by the facts. Whitlow's revocation of the

---

[8]This court, in its prior Opinion (#35), in rejecting Cognis' argument that it was entitled to summary judgment on Whitlow's claim, stated that "there is a genuine issue of material fact which precludes summary judgment in favor of Cognis on the issue of whether or not there was a causal connection between Whitlow's protected activity and his termination." Although this genuine issue of material fact certainly would apply equally to the current motion, this language in isolation does not accurately reflect this court's prior analysis. Specifically, in the same paragraph, this court explained that if the act of revoking the LCA was protected activity, "there is no question that there is sufficient direct evidence of causation . . . ." After concluding that revoking the LCA is protected activity, no genuine issue of material fact remains.

LCA, which clearly was protected activity, was the same act as his "election not to enter the LCA." Therefore, even crediting Defendant's theory of the case, the direct cause of "reverting to the pre-LCA status quo" was Whitlow's revocation of the LCA. This change in Whitlow's employment—reverting to a prior decision to terminate his employment—would constitute an adverse employment action because it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). In conclusion, even under Cognis' interpretation of the facts in this case, there is no genuine issue of material fact that Cognis unlawfully retaliated against Whitlow on May 21, 2007.

### B. *Theory #2—Retaliation by Offering LCAs*

This court, in its prior Opinion (#35), addressed Cognis' argument that offering LCAs to Whitlow and the other employees did not constitute retaliation under Title VII. In addressing this argument, this court considered two issues: (1) whether the enforcement of the terms of the LCAs could be considered a retaliatory policy under Title VII; and (2) whether threatening an employee with retaliation constitutes an adverse action. This court concluded that "there is sufficient legal support . . . to reach the conclusion that Cognis' threat of retaliation contained in the LCAs constitutes a retaliatory policy under Title VII." Also, this court explained that threatening retaliation can constitute an adverse action because it "might . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 63. Nevertheless, this court did not find that Cognis' use

of the LCAs constituted Title VII retaliation as a matter of law.[9]  Rather, based on these conclusions, this court explained that it would be able to find as a matter of law that Cognis' use of LCAs constituted actionable retaliation in two hypothetical situations: (1) an employee was offered the LCA *because* he opposed a practice made unlawful by Title VII or made a charge under Title VII;[10] or (2) the LCA was enforced, and an employee was fired, *because* he opposed a practice made unlawful by Title VII or made a charge under Title VII.[11]  The parties have now had an opportunity to offer further legal arguments relating to these issues and this court will discuss each conclusion separately.

1. *Retaliatory Policy*

The policy that this court concluded was retaliatory, relying in part on the Seventh Circuit's opinion in Board of Governors, was the policy contained within the LCAs that threatened termination if an employee took statutorily protected activity.  The retaliatory policy that the Seventh Circuit dealt with in Board of Governors was a collective bargaining agreement provision that denied employees contractual rights to grievance proceedings if the employee initiated an age-based discrimination claim.  Board of Governors, 957 F.2d at 425.

---

[9]Although this court would like to find that requiring employees to agree to an unenforceable waiver of rights is actionable as retaliation under Title VII, the statutory language is clear that a cause and effect relationship is needed to be actionable.  Here, although requiring employees to sign an unenforceable waiver of rights is an adverse action, protected activity is also needed under the clear statutory language.

[10]In this scenario, being offered an LCA, which threatens retaliation, constitutes the adverse action element of the *prima facie* case.

[11]In this scenario, the adverse action is adhering to the retaliatory policy by firing the employee for taking protected action, which is prohibited by the terms of the LCA.

In <u>Board of Governors</u>, there was no dispute that the employer implemented the policy and that there were employees who filed age-based discrimination claims and as a result had their contractual rights to a grievance proceeding denied. <u>Id.</u> at 426. In other words, there was no dispute that each element of the *prima facie* case for direct retaliation was satisfied. The question addressed by the Court was whether the good faith of the employer in adopting the policy was relevant to the plaintiff's retaliation claims. The Seventh Circuit concluded that "[i]n a retaliatory policy case an employer's alleged good faith is irrelevant." <u>Id.</u> at 429.

In contrast to the factual situation in <u>Board of Governors</u>, the retaliatory policy contained in the LCAs used by Cognis was never enforced against Whitlow or the other employees. Therefore, <u>Board of Governors</u> does not provide support for holding that Plaintiffs are entitled to a finding of retaliation as a matter of law in the absence of a showing that there was any protected activity by Plaintiffs. The Sixth Circuit, in addressing a similar factual situation, explained:

> We do not find the Seventh Circuit's <u>Board of Governors</u> opinion to be compelling precedent with respect to this case. In <u>Board of Governors</u>, the employer actually took an adverse action against the employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC. That action clearly constituted retaliation . . . . While the Seventh Circuit addressed what it determined to be the facially retaliatory CBA provision that purported to authorize the action, that policy was before the Seventh Circuit because the employer had implemented it and had engaged in a retaliatory act. Here, [the defendant] has offered a contract, and, on the record before us, has engaged in no further action.

<u>EEOC v. SunDance Rehabilitation Corp.</u>, 466 F.3d 490, 498 (6th Cir. 2006).

Therefore, the conclusion that the threat of retaliation contained in the LCA constitutes a retaliatory policy only allows this court to find retaliation as a matter of law if

13

Cognis exercised the policy against any employee who took protected activity. However, in this case, there is no evidence that Cognis ever enforced the retaliatory policy. Although several employees entered into LCAs containing this retaliatory policy, Cognis undisputedly never acted on the policy. As Cognis now concedes, the retaliatory policy is void because it violates public policy. Nevertheless, the missing element from this theory of retaliation is a situation where Cognis enforced the retaliatory policy against any of its employees.

2. *Threat of Retaliation*

In denying Cognis' Motion for Summary Judgment (#29), this court reasoned that a jury could permissibly conclude that requiring an employee to sign a LCA as a condition of continued employment was an adverse employment action. The basis for this conclusion was the determination that the threat of termination for undertaking future protected activity, a threat explicitly made by the terms of the LCAs, "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 63. Nevertheless, this conclusion that a threat of retaliation can permissibly be considered an adverse employment action only satisfies one element of the *prima facie* case of retaliation. Plaintiffs must still establish that there was protected activity and that there was a causal connection between the protected activity and the adverse employment action (being forced to agree to the terms of the LCA in order to remain employed by Cognis).

In this case, there is no evidence that any employee who received a LCA took protected activity prior to receiving the LCA. Nevertheless, this court believes that the factual circumstances of this case would allow a jury to determine that Cognis preemptively

retaliated against poorly performing employees—therefore the fact that Plaintiffs took no protected activity prior to receiving the LCAs does not foreclose their claims of retaliation. See Sauers, 1 F.3d at 1128. Specifically, this court believes that a jury could reasonably conclude that Cognis feared protected activity from poorly performing employees if they were terminated and therefore offered LCAs which required the poorly performing employees to give up their civil rights as their sole alternative to termination.[12] Therefore, because there is a genuine issue of material fact relating to whether Cognis anticipated protected activity when it offered LCAs to Whitlow and the other employees, summary judgment would be inappropriate on the theory that the mere offer of the LCAs to Whitlow and the other employees was actionable retaliation.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiffs' Motions for Summary Judgment (#38; #40) are GRANTED in part and DENIED in part.

(2) The parties may contact Magistrate Judge David G. Bernthal's chambers to request a settlement conference to renew settlement negotiations, if desired.

(3) A status conference, by telephone, is scheduled for June 13, 2012, at 9:30 a.m., to discuss scheduling a jury trial on the remaining issues in this case.

ENTERED this 23rd day of May, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE\

---

[12] This court notes that the language of the LCA supports this inference, because fear of such protected activity seems to be one of the only reasons for placing the retaliatory provision in the LCA.